# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 25-1533

DERRICK MCCOY,

*Plaintiff-Appellant,*

*v.*

MARKWAYNE MULLIN, Secretary of Homeland Security,

*Defendant-Appellee.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 22 C 2690 — **Daniel P. McLaughlin**, *Magistrate Judge.*

---

ARGUED FEBRUARY 10, 2026 — DECIDED JULY 14, 2026

---

Before EASTERBROOK, SCUDDER, and KIRSCH, *Circuit Judges.*

KIRSCH, *Circuit Judge.* Derrick McCoy worked as a Protective Services Officer at Paragon Systems until he was terminated after he was involved in an incident with an unruly customer at a social security office. After McCoy was terminated, Paragon agreed to reinstate him only if the Department of Homeland Security—which contracted with Paragon to provide security services at the social security office—deter-

mined that McCoy was suitable to continue to work on a DHS contract. But after reviewing the circumstances of his termination, DHS provided McCoy with an unfavorable suitability determination. McCoy sued DHS, alleging that the decision was unlawful age discrimination. The district court granted DHS's motion for summary judgment, concluding that McCoy could not make out his prima facie case of age discrimination. Because the record contains no evidence that DHS's suitability determination was made because of McCoy's age, we affirm.

I

Derrick McCoy was employed as a Protective Services Officer (PSO) by Paragon Systems until his termination. Paragon contracted with the Federal Protective Service (FPS)—part of the Department of Homeland Security—to provide security services at various federal facilities. One of these facilities was a social security field office in Chicago.

McCoy was stationed at that field office when a customer became unruly. After the customer refused to leave, McCoy and PSO Lattrice Haywood escorted the customer to an empty interview room. While Haywood stepped out of the room to call the police, McCoy took photos of the customer. The parties dispute whether McCoy cooperated with the police once they arrived at the scene. FPS Inspector Jamie Taylor, who had arrived at the scene at the same time as the police, reported to his commander that McCoy failed to use handcuffs to restrain the unruly customer while the customer was in the interview room by herself and used his cellphone to take photos of the customer, violating orders. Taylor's commander subsequently reported the incident to Paragon. There's evidence that Taylor had previously made derogatory

comments, including that some PSOs were "too old" and not in shape to do the job.

McCoy was suspended pending Paragon's investigation into the incident. After determining that McCoy had not properly followed orders and detainment procedures, Paragon terminated McCoy. Paragon noted that McCoy initially left the unruly customer unhandcuffed, took pictures of the individual with his personal device, failed to cooperate with an official investigation, and that his interview responses corroborated the reports regarding his behavior.

After his termination, McCoy engaged in union grievance procedures with Paragon. These proceedings led to a settlement in which Paragon agreed to rescind McCoy's termination if he could obtain a favorable suitability determination from DHS.

Chris Campbell, a Personnel Security Specialist at FPS, reviewed McCoy's application, and after receiving more information from McCoy and Paragon about the termination, recommended an unfavorable suitability determination. The final suitability determination was made by Dina Martinez, the Security Operations Branch Chief at FPS. Martinez agreed with Campbell's recommendation and concluded that McCoy was unfit to work on a DHS contract. McCoy does not dispute that Martinez was unaware of McCoy's age at the time of the decision.

McCoy brought this case against DHS alleging (as relevant here) that he was discriminated against on the basis of his age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et. seq. The ADEA protects workers 40 years of age and older from age-based employment discrimi-

nation. *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 367 (7th Cir. 2019). McCoy did not name Paragon as a defendant. The district court granted DHS's motion for summary judgment, concluding that no reasonable jury could conclude that McCoy's age was the reason for the adverse employment action, and McCoy appealed.

## II

We review a grant of summary judgment de novo. *Sinha v. Bradley Univ.*, 995 F.3d 568, 573 (7th Cir. 2021). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We "consider all of the evidence in the record in the light most favorable to the non-moving party, and we draw all reasonable inferences from that evidence in that party's favor." *McDaniel*, 940 F.3d at 367 (citation modified).

McCoy argues that DHS discriminated against him when it engaged in what he says was a biased and procedurally flawed investigation that led to an unfavorable suitability determination. But McCoy has not brought a claim against Paragon and seems to assume that DHS is his employer. We note at the outset that it's unclear whether McCoy was employed by DHS for the purposes of his ADEA claim. DHS moved to dismiss McCoy's claim below on this basis, but the district court denied the motion, concluding that "DHS had just as much authority as Paragon, if not more, when it came to reinstating McCoy." And DHS later conceded for the purpose of summary judgment that there was a dispute of fact concerning whether it could be held liable as a joint employer. We have noted that "an entity other than the actual employer may be considered a 'joint employer' only if it exerted significant

control over the employee." *Whitaker v. Milwaukee County*, 772 F.3d 802, 810 (7th Cir. 2014) (citation modified). Given DHS's concession, we are not being called upon to resolve this issue. Although we have doubts, even if DHS was McCoy's employer, McCoy's claim fails. We therefore can assume without deciding that DHS was McCoy's employer for the purpose of his claim.

An ADEA plaintiff may prove discrimination "by introducing direct or circumstantial evidence that he suffered an adverse employment action because of his age." *Murphy v. Caterpillar Inc.*, 140 F.4th 900, 911 (7th Cir. 2025). We consider the evidence holistically, *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016), and "what matters is whether a plaintiff presented enough evidence to allow the jury to find in his favor." *Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 957–58 (7th Cir. 2021) (citation modified). One way to do this is under the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). McCoy presents his claim under the *McDonnell Douglas* burden-shifting approach but separately argues that *Ortiz* supports his claim.

Under the *McDonnell Douglas* framework, a plaintiff must demonstrate that (1) he was over 40 years of age; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated, substantially younger employees were treated more favorably. *Murphy*, 140 F.4th at 911. McCoy was over 40 years old at the time that DHS made the suitability determination and therefore is a member of the ADEA protected class. But McCoy's claim fails on at least the second and fourth elements.

McCoy argues that he was meeting Paragon's legitimate expectations. But his suit is against DHS, and he provides no evidence to support his claim that he was meeting DHS's legitimate expectations. It makes no difference for the purpose of McCoy's claim against DHS that he was meeting Paragon's expectations—and regardless, the evidence indicates that he wasn't.

We can assume without deciding that DHS's suitability determination constitutes an adverse employment action. McCoy asserts that both his termination from Paragon and the suitability determination separately constitute adverse employment actions. While termination is an adverse employment action, *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453–54 (7th Cir. 2011), it was Paragon, not DHS that terminated McCoy, so we consider only the unfavorable suitability determination.

McCoy also cannot demonstrate that a similarly situated, substantially younger employee was treated more favorably. At summary judgment, McCoy identified for the first time PSO Haywood as a comparator. But the district court declined to consider Haywood as a comparator, reasoning that McCoy was obligated to put forward Haywood as a comparator during discovery. Federal Rule of Civil Procedure 26(a)(1)(A) required McCoy to disclose the name of each individual that he may use "to support [his] claims or defenses." Parties should supplement these disclosures in a timely manner if they learn "that in some material respect the disclosure is incomplete or incorrect" and where "the additional or corrective information has not otherwise been made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e)(1)(A). And Rule 37(c)(1) provides that where a party fails to identify

a witness as required by Rule 26, "the party is not allowed to use that information or witness to supply evidence on a motion … unless the failure was substantially justified or is harmless." Determining whether non-compliance with Rule 26 is substantially justified or harmless is left to the "broad discretion" of the district court. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 514 (7th Cir. 2011).

The district court did not abuse its discretion when it declined to consider Haywood as a comparator. Although DHS was aware during discovery of Haywood's involvement in the incident with the unruly customer, McCoy never indicated that he intended to use her as a comparator for the purposes of his ADEA claim until after the close of discovery. Indeed, DHS repeatedly asked McCoy for names of potential comparators during his deposition and in written discovery, and McCoy failed to provide any. The district court noted that discovery had already been completed, and allowing McCoy to present Haywood as a comparator would require reopening of fact discovery. We see no error in this reasoning. See *King v. Ford Motor Co.*, 872 F.3d 833, 838 (7th Cir. 2017) (finding that a district court did not abuse its discretion when it rejected a party's attempt to put forward a declaration from a witness who had not been disclosed until after the close of discovery).

Even if the district court should have allowed McCoy to use Haywood as a comparator, McCoy also failed to demonstrate that he and Haywood were similarly situated. "A valid comparison normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distin-

guish their conduct or the employer's treatment of them." *Arnold v. United Airlines, Inc.*, 142 F.4th 460, 472 (7th Cir. 2025) (citation modified). Other than stating that Haywood was a younger PSO (and it's unclear exactly how old Haywood is), McCoy does not explain how they are similarly situated, and there is no evidence that Haywood engaged in the same protocol violations during the incident or at any other time. See *Igasaki*, 988 F.3d at 958 ("Whether a comparator is similarly situated is typically a question for the fact finder, unless, of course, the plaintiff has no evidence from which a reasonable fact finder could conclude that the plaintiff met his burden on this issue.") (citation modified).

For similar reasons, McCoy's ADEA claim fails under *Ortiz*. Under *Ortiz*'s holistic approach, the district court considers "whether the evidence would permit a reasonable factfinder to conclude" that the plaintiff's age "caused the discharge or other adverse employment action." 834 F.3d at 765. The record contains no evidence that DHS's suitability determination was made because of McCoy's age. See *McDaniel*, 940 F.3d at 369–70. The only evidence remotely related to age is the stray remarks that Taylor, who was not involved in the suitability decision, apparently made, including that some PSOs were "too old" to do the job. But McCoy's age or physical capability were not given as reasons for the unfavorable suitability determination and stray remarks are typically insufficient to create an inference of discrimination when not made by a decision-maker. See *Mach v. Will Cnty. Sheriff*, 580 F.3d 495, 499 (7th Cir. 2009). Rather, the record demonstrates that McCoy received an unfavorable suitability determination because his conduct during the incident made him unfit to continue to work on the DHS contract with Paragon. And to the extent that McCoy raises a cat's paw theory of liability

based on Taylor's comments, McCoy would need to demonstrate that Taylor "actually harbored discriminatory animus against him" and that Taylor's "input was a proximate cause" of the adverse action. *McDaniel*, 940 F.3d at 370. McCoy has failed to do so. It's unclear when Taylor made these comments, and to the extent McCoy argues that Taylor tended to exaggerate or fabricate complaints about others, McCoy has failed to explain how these fabrications relate at all to age-based animus. Further, Martinez—who made the ultimate suitability determination—arrived at her conclusion after considering a recommendation from Campbell, who had conducted an independent investigation, considering both Paragon's and McCoy's explanations of the incident. See *Sinha*, 995 F.3d at 575 (finding that an ADEA plaintiff could not proceed under a cat's paw theory of liability where the ultimate decision was not wholly dependent on an allegedly biased supervisor's narrative). Thus, McCoy has presented no evidence that raises an issue of material fact that DHS's unfavorable suitability determination was because of his age.

AFFIRMED